**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4337
_____

SUN LIFE ASSURANCE COMPANY OF CANADA
v.

WELLS FARGO BANK NA, AS SECURITIES INTERMEDIARY,
Appellant

_____

No. 16-4387
_____

SUN LIFE ASSURANCE COMPANY OF CANADA,
Appellant

v.

WELLS FARGO BANK NA, AS SECURITIES INTERMEDIARY
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:14-cv-05789)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
August 19, 2019

Before: CHAGARES, RESTREPO, and FISHER, Circuit Judges.

(Filed: August 21, 2019)

_____

OPINION*
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

These cross-appeals present novel and important questions of New Jersey law.

First, does a stranger-originated life insurance ("STOLI") arrangement, in which the

holder of a life insurance policy lacks an insurable interest in the life of the insured,

violate public policy under New Jersey law, and as such is it void ab initio?  Second, is a

later purchaser of the policy who was not involved in the STOLI arrangement entitled to

a refund of any premium payments that he or she made?  We certified these questions to

the Supreme Court of New Jersey.  The Court has now responded, answering yes to the

first question and yes to the second question depending on the circumstances.  <u>Sun Life</u>

<u>Assurance Co. of Canada v. Wells Fargo Bank, N.A.</u>, 208 A.3d 839 (N.J. 2019).  Based

on these answers, we will affirm.

I.

We write for the parties and so recite only those facts necessary to our decision.

On July 13, 2007, plaintiff Sun Life Assurance Company of Canada issued a

$5 million life insurance policy (the "Policy") on the life of Nancy Bergman.  The sole

owner and beneficiary of the Policy at the time it issued was the Nancy Bergman

Irrevocable Trust (the "Trust").  The Policy was issued following an application signed

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

2

by insurance agent David Kohn, Ms. Bergman, and Nachman Bergman — Ms. Bergman's grandson and the trustee of the Trust. The Policy had an effective date of April 9, 2007. The Policy contained an incontestability clause that prohibited Sun Life from contesting the policy on any grounds except for non-payment of premiums after it had been in force for two years during the life of the insured.

In the course of the application for the Policy, Sun Life received an inspection report that stated that Ms. Bergman had $9.235 million in assets and net worth. However, after an investigation into her assets following Ms. Bergman's death, Sun Life discovered that Ms. Bergman's estate was allegedly valued at between $100,000 and $250,000; her only major asset was a condominium that may have been worth as much as $285,000, and her total assets did not exceed $1 million. A group of investors unrelated to Ms. Bergman funded the Policy. These investors deposited money into the Trust's account that was used to pay most, if not all, of the premium payments. On August 21, 2007, a little over a month after the Policy was issued, Nachman Bergman resigned as trustee and appointed the investors as successor co-trustees. The terms of the Trust were then amended to provide that the majority of the benefits of the Policy would flow to the investors and permitted the investors to sell the Policy without the consent of either Nachman or Ms. Bergman.

In December 2009, the Trust sold the Policy to SLG Life Settlements, LLC, and most of the proceeds of that sale went to the investors. A company named LTAP later acquired the Policy. Wells Fargo loaned funds to LTAP, which were used to pay premiums on the Policy. Wells Fargo then obtained the Policy as part of a settlement

agreement in LTAP's bankruptcy proceedings.  Wells Fargo made further premium payments on the Policy.

Ms. Bergman died on April 6, 2014.  Sun Life declined to pay out the death benefit to Wells Fargo, concluding that the Policy had been fraudulently obtained.

Sun Life filed this action seeking a declaration that the Policy was void ab initio as part of a STOLI arrangement.  Wells Fargo responded by filing a counterclaim for breach of contract, seeking payment of the full death benefit.  The District Court partially granted summary judgment in favor of Sun Life, finding that New Jersey law applied and determining that the Policy was void ab initio as an illegal STOLI arrangement.  The District Court reasoned that because the Policy was held by investors who lacked an insurable interest in the life of the insured, this would likely violate New Jersey public policy.  The District Court also partially granted summary judgment in favor of Wells Fargo, finding that it was entitled to a partial refund of premium payments it made after acquiring the Policy in the amount of $1,245,529.51.  The parties cross-appealed.

## II.[1]

To resolve these appeals, we certified two questions to the Supreme Court of New Jersey.  The first question was:  does a life insurance policy that is procured with the intent to benefit persons without an insurable interest in the life of the insured violate the public policy of New Jersey, and if so, is that policy void ab initio?  The Court answered: "a life insurance policy procured with the intent to benefit persons without an insurable

---

[1] We have appellate jurisdiction under 28 U.S.C. § 1291.  The District Court had jurisdiction under 28 U.S.C. § 1332.

interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset." Sun Life Assurance Co., 208 A.3d at 859.

Based on that answer, we will affirm the District Court's grant of partial summary judgment to Sun Life. The District Court found that the undisputed facts demonstrated that the Policy was procured with the intent of benefiting the investors in the STOLI arrangement, and not benefiting anyone with an insurable interest in Ms. Bergman's life. The New Jersey Supreme Court has confirmed that such an arrangement violates the public policy of New Jersey and is void at the outset.

The second question was: if such a policy is void ab initio, is a later purchaser of the policy, who was not involved in the illegal conduct, entitled to a refund of any premium payments that they made on the policy? The Court answered: "a party may be entitled to a refund of premium payments it made on the policy, depending on the circumstances." Id. The Court further explained:

> In the context of a void STOLI policy, [a] fact-sensitive approach . . . is sound. To decide the appropriate remedy, trial courts should develop a record and balance the relevant equitable factors. Those factors include a party's level of culpability, its participation in or knowledge of the illicit scheme, and its failure to notice red flags. Depending on the circumstances, a party may be entitled to a refund of premium payments it made on a void STOLI policy, particularly a later purchaser who was not involved in any illicit conduct.

Id.

The District Court proceeded in just this way. On review of the evidence presented at the summary judgment stage, it agreed with Wells Fargo that permitting Sun Life to keep Wells Fargo's premium payments would be an unfair windfall, because, as a

later innocent purchaser of the Policy, Wells Fargo was not responsible for and did not have knowledge of the STOLI arrangement when it continued to make payments on the Policy.  In other words, "the District Court considered equitable principles and fashioned a compromise award based on the record before it."  Id.  The result comported with the law of New Jersey as announced by its Supreme Court.

III.

For these reasons, we will affirm the District Court's partial grant of summary judgment to Sun Life and partial grant of summary judgment to Wells Fargo.